Case is 2012-11-70 SUPREMA v. ITC A lot more issues in this case than in the previous one, right? Yes, Your Honor. May I please report? Your Honor, we're looking for appellants at SUPREMA and mental health. I'd like to reserve three minutes for rebuttal, if I may, Your Honor. The Commission first erred by considering detecting a fingerprint's shape. That limitation to read out any shape detection or inform abasing the detection on the open... If you don't mind, could I start with the 337 and the other issues? Because I think I don't want to set you off guard, but I think I have some questions on that. Very well, Your Honor. Could I just ask you firstly about the exclusion order itself? Does it prevent SUPREMA from importing any scanners found to infringe the 334 or the 993? Or can they still import scanners as long as they don't sell them to MentalX? Because the direct infringement here is MentalX, and you keep arguing that there are non-infringing uses. So what does the exclusion order actually do? The exclusion order only pertains to the 993, as is already, Your Honor, because that's the one... I'm sorry, you're right, yes. So the product itself actually infringes. But the Commission found that the SUPREMA scanners and the SDK do not themselves infringe any of the patents. So they're not the decks of the exclusion order. But, oh, I thought the exclusion order was relevant to the 344. I'm mixing them up. 344, no, that's correct, the 344. Okay, all right. That's correct. The infringement was found as to the 344. So, let me, sorry, I'll... Yes, you're confusing us. As I read this, the exclusion order applies to both, the 344 and the 993. Does it not? Well, it applies only as to the... Well, it's hard to know, because the problem is that the ALJ did not find any infringement by SUPREMA, or anybody, actually. It just found that in the instance where, in the one out of five instances that the Commission looked at, a combination of the stable article scanners and SDK by people in the United States, that there was only infringement as to one, or eventually as to the other four did not. Okay, can I... I'm getting more... Okay, let me see if I can straighten it out, or at least tell you what I think, and then you can agree or disagree with me. The 993, there's an exclusion order, but the one I think I'm concerned about is the 344 exclusion order, because that's the one that you make the argument with regard to inducement and so forth, right? That's correct. So, those arguments are all related to 344. That's right. Okay. So, looking at the 344, the exclusion order with respect to the 344 patent violation, in your view, does the exclusion order cover just the products that were sold to Mentolix, or does it cover all of the... It's unclear to me, Your Honor. They seem to want to apply them to all the products, even though only one was found to infringe, and only after it was combined with Mentolix software in the United States, actually, that the government is software. Well, the government can respond, and so can Mr. Graham, but it seems to me you've got... I mean, the argument you make with regard to inducement, and sort of this hybrid inducement because they're non-infringing uses, etc., that's much more relevant if you're talking about products that were imported, what was imported that were used for non-infringing uses, as opposed to those in Mentolix, which was found to be direct infringement, right? Am I... I see your point, Your Honor, but that's all right. I'm not clear... I'm not even clear in my own mind as to whether it applies to just the Mentolix ones or the other ones. The problem is that these products were not found to infringe by themselves. These are articles that do not infringe. Only when Mentolix adds federally supplied NIST software to it in the United States, and that one instance out of the other four where customers apply implemented software with our products, and they didn't infringe, was there any infringement found. So our position on that is that there's no 337 violation because articles... because it pertains only to the importation of articles that infringe. And these articles, as they report, do not infringe. Well, there are two different kind of arguments there that one can read. If you're talking about articles that don't infringe because subsequently they're used for non-infringing uses, that's one piece of your argument. But you seem to be arguing something more, which is almost a temporal thing, that at the time of importation, because they may or may not at the end of the day be infringing because some of them have non-infringing uses, that you can never have inducement with respect to any product. Is that your argument? Well, maybe not quite so broadly, but in this instance, yes. You cannot have inducement that is untethered to the actual infringement by the article itself. So are you saying... you're not making the argument that you can never have inducement under 337, are you? I wouldn't say never, but I would say it was very difficult because you'd have to... In a method claim. In a method claim, because you'd have to... the Commission and the Court has been very clear about method claims not being important. They only happen when they're done in the United States. So very difficult to get a method claim that meets the importation requirements of 337. And why? I mean, can you just tease that out a little bit? Because you're saying why? That at the time of importation, there's not been a direct infringement yet, and so it's... Well, it's a problem of... if a Commission decrees or a statute, it only has interim jurisdiction and interim... And if you put that the way it enforces, it enforces through customs. How is customs to know whether the staple articles are going to be used in the future? They don't have a crystal ball. They don't have any way of knowing whether those staple articles are going to be used in an infringing way. So the only way that makes sense under 337 is to read that, as literally it says, articles that infringe... that import articles that infringe. And we don't import articles that infringe. We import articles that may be used to infringe, but not... What about a circumstance? Let's assume that Suprema has written, and we all know there's a declaration that Suprema says, we're importing these to sell to mentalists. And we know that mentalists, at the end of the day when they use this, will be a direct infringer. Is that sufficient to satisfy it because then there's a clear notice? Or are you saying... I just want to find out your argument. Are you just saying you can never have inducement almost because it hasn't happened yet? Right. So that may be a different case, but that's not our case here because, as Your Honor knows for the record, there was no willfulness... there was no inducement finding as... No, I know. I know what your position is. I'm just trying to understand the theory. I mean, it's hard. I mean, this is difficult. As far as I can tell, we really... If you're saying that the Commission is a creature of statute... It is. But then your argument, and you're saying that by statute they shouldn't have or don't have jurisdiction to put a bar order on with respect to these types of articles, then your theory has to be a statutory one that would seem to apply to all facts. And that's one of the problems I'm having with your brief is that at one point you say, no, inducement doesn't fall within the bounds of their statutory authority, and then at another point you say, well, but sometimes it could. And I don't understand that. Are you saying that it only could if it also is a precise circumstance in which you'd have contributory? Right. 271C as opposed to 271B? Yeah, I can't imagine a situation where there... a pure inducement claim where there's no importation of any articles that of themselves infringed would fall under 337. I can't think of one. So maybe I am saying that, Your Honor. That's because of 337 jurisdiction is in rem. It's in rem, that's correct. And if you look at the condition of the goods upon importation. That's right. And that's what the testament was able to do. And that's all this court and the ITC can actually do. So if you have a method claim. So you have a method claim. So it's only circumstances where the only thing you can do is these steps on this particular article? I mean, how do you... Well, so if the only thing that can be done with the stuff that comes across the border is infringed with them, then you'd have a contributory infringement under the statute, the statute of subject. But that's different. We don't have the contributory infringement here. We only have the importation of articles that are stapled, that don't themselves infringe. So it's not really... You're not really saying then that sometimes inducement can be a ground for jurisdiction in front of the commission. What you're saying is that sometimes indirect infringement can be captured, but not when it's inducement as opposed to contrib. I think that's what I'm saying here. I can't think of an instance where pure inducement would fall within the statutory framework of 337. I thought in your brief you did say you carved out an exception that made you think about design and functionality. It was ambiguous. I mean, you tried to articulate what would fall within that. I was trying to think of one, but I couldn't. That's the problem. Well, that's where I was confused. Because it appeared like you were carving out an exception, but then your exception seemed to describe contrib. I think that's right. If you look at all the cases where even the commission itself has found that to be the case, the articles are contributorily infringing because they're not staple articles. They're especially made for the... There are no non-infringing uses. And there are no non-infringing uses. That's right. And that's not the case we have here. We have articles that the commission itself found were not infringing by themselves. The issue of non-infringing uses is that how does that fall under inducement? That's just a contributory negligence element, isn't it? Well, if you are contributorily infringing, then you're reporting an article that infringes. And I think the No. 327 problem would address that. You want to turn briefly to willfulness? Yes. I mean, one of the threshold concerns we have with respect to this argument is some of the information that's relevant to willfulness is more confidential. Is everyone adhering to those markings? So far, because we do have to look downstream at a district court action, and CrossMatch has been a very aggressive competitor about using information in the public domain. The willful blindness, I want to point out that I did earlier, that ALJ did not find any inducement. Only the commission found it on the same cold record as before, Your Honors. Under global tech, a willfully blind defendant is one who takes deliberate actions to avoid... Even if you're right about that there was an error, we would have to send it back, would we not? Because the commission explicitly reserved finding whether or not there was actual knowledge. They said, well, we don't have to look at whether there was actual knowledge, because we find they were willful blindness, which seems a little... There was no evidence of actual knowledge, and there was no evidence of even willful blindness. But the commission never made a finding on whether or not there was... I mean, they reserved finding on that, or am I misreading it? No, but I think their chance was to do that when they addressed this matter. I mean, the record is full of argument and evidence about whether... It's complete about whether or not there's any actual knowledge or not. Do you perceive a problem in that the commission, when you said made it on the basis of the cold record, because the administrative judge did not make credibility findings with respect to... That's right. There were no credibility findings made by the ALJ, so they did it on the cold record. The commission said they applied global tech, but they really didn't. They instead applied a test that was divorced from any wrongdoing. At most, they said that what they found is that Suprema failed to find the 344 patent. But there was nothing wrongful about the patent itself or the application of the patent to their products. My problem with your argument, it goes back to what Judge Post was asking about, about the confidential information, because you characterized the commission's finding in a very narrow way, as does the amicus brief, but yet there were a lot of other facts that the commission looked at which are very similar to the facts on global tech. Are they not? Let's look at them. The evidence is that my clients looked at the 562 patent, but only if you look at that patent and assume that you carried all the way through finding the 344 patent out of the pending applications that were mentioned in that, which you find the 344 patent itself. But again, that doesn't lead to any wrongfulness or high probability of wrongfulness. That's the problem that the commission had. They didn't apply any wrongfulness filter to this. They just applied a negligence one, or we assume both of them. But what about the other facts? I don't want to violate any confidentiality markings here, but there are other facts that do give rise to an inference of wrongdoing. Well, no, there weren't. The fact that we researched the products, the products that had no U.S. patent markings whatsoever, none of the products did, even those sold in the U.S. Their own expert admitted that the 344 patent didn't cover all ways of doing auto capture or segmentation. Copying, they said, they used the word copying, but copying was impossible because you needed the source code to do that. No evidence that there was any source code that was ever seen by Soprano. And there could have been copying, but there was no infringement. The actual SDK and standards did not infringe. They talked about failure to obtain an opinion council. The council would have done the same thing as the commission, found that there's no infringement by the Soprano standards or the SDK. So there's no, even if you add that all up, you don't add up to any wrongdoing. And that's the touchstone of the global tech standard, that there has to be a deliberate action to avoid the probability of wrongdoing. And all they did was possibly negligently fail to see the 344 patent. But even a 344 patent, plus the products, doesn't get you into wrongdoing. And I'm really excited about that. Can we just have some questions for a minute? I'm really struggling with this basic concept here, and that is that the commission said that Mentelix conceded direct infringement. No, there was no concession of direct infringement. Well, that's exactly what the commission said. The commission said there was. And that's why I'm trying to understand why we're even arguing direct infringement. Well, so we're arguing about that because the findings that was asked to Soprano has to induce it. So you're saying the commission was just dead wrong when it said point blank that Mentelix conceded direct infringement. That's correct. We're talking about the 344 patent. That's right. There are a number of errors where they went off and said things that really aren't supported by the commission. Did you raise that in your brief? Yeah, you didn't dispute that in your brief. There were a lot of limitations. We can't get them all. Yeah, but this one's pretty key. I mean, if there's no direct, we don't even have to reach the inducement part. Yeah, on page 12 of the commission's decision, the 198th of the appendix, the record evidence shows, and Mentelix itself does not dispute, that it integrates its credit unit software with the importance of senior scanners and educate software to reduce the resulting scanner system in the practice of 2019, and that Mentelix directly infringed 2019 by providing training and demonstrations of its integrated scanners. It says, accordingly, Mentelix is a direct infringer and has violated 337, given excesses found between the importation of the scanners and the unfair act of infringement, and then it goes on to consider indirect. So I guess what I'm trying to understand is, how did the commission come to believe that there was a agreement as to direct infringement by Mentelix, and then we're still arguing these infringement points? Well, Mentelix never conceded that they directly infringed 2019 at all. In fact, we contested the construction of detecting a fingerprint shape and argued that it was improperly construed to read out the detection of shape in any requirement. Is that the 3993, or is that the 3404? That's the 3404. And that was claim 19? Claim 19. And you disputed that claim construction throughout the entire process? We did. And you disputed the infringement of claim 19 throughout the proceeding? We did, as well as the construction behind it, which is where the commission applied the same construction they did for claim 1, a similar limitation in claim 1, and basically said that all you have to do is identify concentrations of black pixels, and that doesn't do it for you. You have a finger with three segments in it. It's going to create three blobs. You draw a box around each of them. You don't know which of them, sort of like a shell game, you don't know which of them has the oval in it, which is the one you're interested in. And the whole point of this patent is to distinguish the rectangular shapes inside, that might be the other two parts of your fingers, from the oval part at the tip. And the construction does away with all shape detection. You can't tell whether you have it inside the box, the oval, or the rectangle. All right. Just one question on the 993. You say that there was evidence of motivation to combine, and as I understand it, you're relying entirely on, what is it, Dr. Sassion, and that one statement that there would be a motivation to combine because it's absent, so we've got to go find it somewhere? That's all I said. That should be an afterword, because on the KSR, the motivation to combine can come from a person wanting to put together a patent and invention. Someone looking at the 060 reference would say, look, I need to put a lens here, lens 28. The ALJ made a mistake by not looking at lens 28, looked at some other lens. Well, could it be that the ALJ didn't credit that monocredit that that's on, didn't find the persuasive? I mean, should we defer to that? I don't believe so, Your Honor, because you can certainly look at the 060 patent itself, and find that there is no disclosure of how to put together lens 28. Somebody looking to put this together would have to put an achromatic lens in there. The 051 was just such an achromatic lens. You would have to put this together with some other lens, and the specification is not given. So whether or not the ALJ credited testimony, this court can, as a matter of law, determine that the patent was obvious based on the teachings of these two patents themselves. All right. We're five minutes over, so we'll recredit you with your three minutes for rebuttal, which means to keep it even, we owe the other side eight minutes. So why don't we divide four and four with respect to the two advocates on the other side, which means Mr. Gerdine, you're up to 12 minutes, and Mr. Grant is up to 11 minutes. Does that sound fair, right to everybody? Calculations? Okay. Just going through the issues that were raised. Why don't you start with the—maybe you're in a better position than anyone to tell us what the exclusion order covers and doesn't cover, with respect to the 344. Thank you. Yeah, the exclusion order does exclude the products that infringe the 993 and the 344 patent. All our exclusion orders include, if you look at the paragraph 3, a certification exception. So anyone can certify that these products, just in this case, are not going to intallic, so they wouldn't be used in an infringing manner to infringe. So the exclusion is for intallic. It's a focus on intallic. Right, it's focused on intallic and random. Well, can we just look at it, just so I can be clear? Sure. Are we on appendix 245? That's fine. I have the appendix on here as well. I think that's a notice. Maybe it's not a notice, but it's in the exclusion order itself. So it's part of the appendix. I can read it to you if you want. Okay. Paragraph 3 states, quote, that at discretion of U.S. Customs and Border Protection, pursuance of procedure establishes person seeking to import biometric scanning devices, components thereof, associated software and products containing the same that are potentially subject to the disorder may be required to certify that they are familiar with the terms of the disorder. They have made appropriate inquiry and thereupon state that, to the best of their knowledge and belief, the products being imported are not excluded from entry under Paragraph 1 of this order. At discretion of U.S. Customs, you may require a person to have provided the certification described in this paragraph to accomplish records and analyses that are necessary to substantiate the certification. That's familiar with a lot of our borders. So in this case... Well, I'm looking at the notice, though, which I was looking at. I mean, it doesn't seem to draw any distinctions. It speaks broadly to... So you have at 8245, a limited exclusion order prohibiting, it says, goods and products containing the same that infringe one or more claims of the 993 of the 344 where the devices are manufactured abroad and are imported on behalf of Suprema or Mentelex. So you're saying that if Suprema is importing devices, importing articles that they're ultimately going to sell to someone other than Mentelex, then those things are not covered by the exclusion order? Well, it probably gets more complicated in this case since they were found in violation with respect to the 993 patent. So presumably it was not in violation with respect to the 993 and it's not going to Mentelex, and yes, the certification... Yeah, there's an overlap in products between the two patents but not complete, right? Right, correct, right. Because the record has the... So in other words, what you're saying, that Suprema could send in some of these products as long as they have enough of proof for customs to determine that it's not going to go to either Mentelex or anyone else who might be infringing the claim. Right, as long as they don't infringe it. Because it doesn't limit it to Mentelex. It says if it's going to infringe. Right, paragraph one. So that would require Suprema to essentially find out in advance what kind of software anyone might use if they were going to buy the scanner. Well, no. It's the importer that has to certify whether they're going to use the imported articles in an infringing manner. And if they certify that they're not, then they can go ahead and import the articles. But Mentelex, I think, is excluded entirely from receiving any of Suprema's imports. Exactly. Well, I think it's still got to be a little narrower than that. I mean, the only finding with respect to direct infringement in this case has been with regard to Mentelex, right? So even if, arguably, at the end of the day, Suprema doesn't know whether or not some other company is going to use it for infringement or non-infringement, if they just don't know, that wouldn't be covered in the exclusion order. They could certify that it's not covered in the exclusion order, right? Because there's only been a finding with respect to Mentelex. There's been no finding of direct infringement with respect to anyone else. Right. So if anyone else is going to use these products, there's been no finding of direct. How could they be foreclosed under an inducement theory? Right. They would certainly fall under Paragraph 3 of certifying. I guess in this case, under the record, Mentelex is undisputed an importer of record for these scanners. So they're the only one. The product's going to Mentelex. Doesn't the whole discussion just highlight why it's so difficult to reach the conclusion that this is the kind of thing that should be addressed in the 337 proceeding? I believe it's kind of a separate issue. Perhaps it goes to what should be in the notice versus the order. But I think regarding their claim that inducement alone can't serve as a basis, again, under the words of the statute, following the guidance from the 724 investigation, it says that without something more, you can have a violation with respect to infringement. Here, we do have a something more. We have indirect infringement. Namely, we have- And there's a separate provision in 337 for articles that were made pursuant to a method that was practiced, a patenting method, but that was practiced outside the United States. You can't import those articles. And there's a separate provision that addresses that. But otherwise, the 337, it starts talking about general unfair acts, which certainly I could see you could argue that this is maybe and arguably an unfair act, but it then differentiates between that and articles that infringe and accepts those articles from the general unfair acts category. Right. There's probably a lot of nuances between 35 U.S.C. and our trade statute, but 337 is a trade statute. It simply identifies that you can commission a grant relief upon importation, sale for importation, sale after importation of articles that infringe. Articles that infringe. Right. And infringe is defined as under 35 U.S.C. 271 as direct or indirect. Well, 271B says that one who actively induces can be liable as an infringer. It does not say that the act of actively inducing renders the product an infringing product. Right. It has to be some way to kind of coalesce 35 U.S.C. with the trade statute of Section 337. Well, you can see it has to be a statutory analysis. I mean, this is a creature of statute. Right. So where in the statute are you pointing us to to say that there is jurisdiction in these circumstances? Right. If you just go to the words of the statute, it will state explicitly that upon importation, sale for importation, sale after importation, articles that infringe a valid enforceable U.S. penalty. Okay. That grants a jurisdiction to grant relief. Well, you know, in the Apple case, the commission said it said Apple wasn't infringing because there was no 337 violation because the act of importation is not an act that practices the steps of the asserted method claim. So that's the commission's position with respect to direct infringement. Right. Direct infringement only in the United States. But if you go to page 18, the last paragraph, it says explicitly that thus S3G might have proved a violation of Section 337. No, I agree with you that that's what they found. I'm just – I'm not sure it's consistent or coherent to say one thing, and this is just parrot, you know, what Judge O'Malley said, to say one and then not include inducement to not be within that. It's not an act of importation of an infringing article. Right. I think under the facts of this case, inducement has been shown pre-importation. There's numerous evidence of e-mails, communication, to allow – the Supreme Court issued a decree to allow Mentalics to integrate the SDK along with the FedSubmit software into the final infringing device that, again, Mentalics can import a record for so they can be shown to be a violator. Well, how can you have inducement pre-importation when there's been no act of infringement as of that point in time? Right. I mean, inducement presupposes that there's direct infringement. Now, given our recent case law, there are some changes as to what constitutes direct infringement, I guess, in that context. But you still have to have a direct infringement. Sure. And so if there's no direct infringement pre-importation, how can you have inducement pre-importation? Right. Commission looked at it as a continuum of infringement. Inducement starts pre-importation and is completed as of the direct infringement by Mentalics. But as of importation – So it's not completed. That's the problem we're having. It's not completed until direct infringement occurs, but at the time of importation, it hasn't been completed, right? Right. Again, the fact of this case, we had such pre-importation communication that you do have an article that infringes. You have induced infringement as of the communication that starts pre-importation between the two parties. And yes, direct infringement – But what if you had all that communication and then the article comes in and Mentalics just decides, you know, I'm going to use a different software? So could you bar that product still? Well, certainly, again, under Paragraph 3, they certify that you're not going to use what's established to be – But you're saying you could have put the order on, barring them, just based on their – what you say to be inducing-type conduct. No, under all the facts of the case where you show both prongs of inducement and show direct infringement. And yes, there is a violation found and can be applied to both parties since they are both importers of record of articles that infringe. Well, if your time is about to be up, then I think we can press some of these with Mr. Grant. But I have one other question that's really directed towards the government, and that is your position. I think you take the position that you're entitled to Chevron deference on these instances. Yes. What's your case for that? I mean, it's my understanding, and maybe I've got that – I think the Supreme Court is about to hear arguments in a case next week, I think, FTC. And I think that – one of the issues in that case is whether or not an agency is entitled to Chevron deference with respect to issues of its – involving its jurisdiction. Are you familiar with that case? Am I missing the point here? Well, if you look at a statutory interpretation, as long as we're reasonable interpreting the statutes, which would be – Even on questions involving their own jurisdiction? You don't think that makes any difference? I guess under Chevron, we believe we're still reasonable interpreting that article death and infringement applies to indirect infringement, both contributory inducement, whether it's inducement alone or not. In this case, inducement alone does satisfy the factors for violation of Section 337. Can I ask one more question? Yes. One more question to the government. The 993. There appears to be some real concern by the Commission about whether or not there was a sufficient – really a sufficient industry to support a claim under the 993. Because the Commission – you don't remember this? The Commission and ALJ said there had only been 25 products ever made. They were made essentially like two weeks before the complaint was filed, and it appeared that maybe there was an effort to gin up a domestic industry with respect to certain of those products, and so there was this reporting requirement that was imposed. So the question is whether or not there is – because of the infringement claim, would we have to send it back for the Commission to determine whether the appropriate remedy would still be an exclusion order given that limited domestic industry or that limited showing on domestic industry because there was an overlap in the product. So they were going to be included under 334 anyway. Right. Well, for the threshold question of domestic industry, certainly we determined that it was satisfied. If the court determines otherwise, I guess there's still a question of, you know, the fact that we need to further consider it and it should be remanded for us to take a look at it. Well, then the difference between a sufficient domestic industry to support jurisdiction and a sufficient domestic industry to support the scope of an exclusion order that would have been – that was applied given the fact that there was an overlap in the product. Well, we do have procedures in place for petitions for modification of exclusion order. If that's the case, then certainly that could be the case for modifying exclusion order. Okay. Thank you. Just briefly on local compliance, just wanted to say the facts here. We believe established local compliance. They did extensive research of cross-matches, products, and also discovered patents and held a patent in their hand that incorporated by reference, at least on four occasions, the patent in French, the 344 patent. It was a question I asked if we disagreed with you on that, whether or not we have to send it back, whether it was clear that the Commission would not have found there was actual knowledge or not. Yes, certainly it has to be remanded since we left that question open, whether actual knowledge came back. Did they incorporate the patent by reference or just the application number? Well, they incorporated the patent application, meaning the patent was issued six months prior, in this case April versus October 2007. Okay. Okay. We're going to adhere to giving you your 11 minutes, so we'll just have the extra talk to Mr. Lewis. I will try to be short, Your Honor. With regards to the question of domestic industry, it's not uncommon for there to be a reporting requirement. The issue wasn't appealed, and I don't see how the question of domestic industry is a live one in the case. You don't agree with me that the domestic industry issue, even if it's not alive as it relates to jurisdiction, well, it's not really jurisdictional, but even if it's not alive as it relates to the satisfaction of that element for purposes of obtaining an order, that it might be alive for purposes of assessing the propriety or scope of an exclusion order. I think that that's something for the Commission, Your Honor. The reporting requirement, compliance with the reporting requirement, those are issues that are before the ITC and not before this court. Certainly, I would expect and anticipate the ITC to do its job for us to comply with our reporting requirements, but I don't see how that implicates the court's issues that are before it. Okay. With regards to the limited exclusion order, there's a pretty detailed statute for us, pretty detailed regime with regards to customs. That limited exclusion order is restricted to products that infringe, and there's a detailed process and regime for people to go to customs and complain about it, for us to respond to those complaints. Do you agree that aside from, since the only finding of direct infringement here is with respect to Mentelex, that clearly products imported for purposes of selling to other people would not be included in the exclusion order? I don't know the answer to that, Your Honor, and I don't want to answer on the fly because I haven't thought about it, but I do know that if there's a dispute about the scope of the exclusion order and whether products coming in are subject to it, that's what the ITC has enforcement actions for. Let's see, we have a problem here. I mean, the difficulty for us, and I appreciate your job is different than our job, but I think you can appreciate also that if we're going to decide whether to affirm this exclusion order, we really have to appreciate and understand how it applies and who it applies to. Our conclusion might be very different if the ITC either has already or will someday say this exclusion order applies to different customers, different people, who have not yet been found to directly infringe the product. And I just thought I would submit, Your Honor, is I'm going to address the Court's concerns about the scope of the exclusion order in the statute momentarily, but that issue and that fact scenario is not before the Court, and I don't believe it's right. There was one misstatement made that the ITC only has in rem jurisdiction. Section 337 has an in personam element in the key of sera at page 1357. This Court recognizes that limited exclusion orders are proper for persons determined by the Commission to be violating the section. Regardless, if the Court looks at the actual 337 statute itself, it will find that what's barred are articles importation into the United States, sale for importation, or the sale within the United States after importation of articles that infringe. So a sale within the United States of an imported article, if that subsequent sale constitutes infringement, then it falls within the scope of 337. And to determine then what falls within the scope of 337, we go to section 271. And there's no question that inducement is sufficient. What Mr. Wu and Suprema are arguing for is an important, I think they made an important concession. They are trying to read 271B and inducement out of the statutory scheme of section 337, and I don't think that's permitted. Certainly not permitted by this Court in the absence of clarification from Congress. Now, with regards to how that statute... But again, going back to what we were talking about before, we're talking about a method claim here, right? Yes, Your Honor. So it says the article when sold in the United States infringes, but it can't possibly infringe until the method is practiced. Well, Your Honor, in the Kiyosera case, and it's consistent with the Commission's precedent, what this Court did was remand that case to the ITC because the legal standards had changed to give the ITC the opportunity to examine whether Qualcomm's conduct satisfied the specific intent requirement. In that case, they were chips that were imported and only became infringing once software was added. By the way, as a factual matter, it's important that the software functionality that was incorporated by Mentalix into that software is software that's provided by Suprema. When Suprema sells its scanners, it provides software development kits that are then modified or incorporated into the user interface for customers here in the U.S. But the infringing functionality in the Mentalix software was functionality that was provided in large part by Suprema as part of its infringing importation. And that subsequent sale in the United States after importation unquestionably implicates Section 337. There's nothing in certain electronic devices in the Commission's decision that says otherwise. In fact, in that case... No, I agree. I mean, I agree. That's true. I mean, I think there are different parts of it that support either one of you. But can you go back to the point about the breadth of the exclusion order? And so, assuming we agree with you so far that there's some statutory underpinning that would allow inducement, what would allow inducement or do you agree that inducement wouldn't be allowed unless there's a finding of direct infringement? As a matter of law, it's my understanding, Your Honor, that to find induced infringement, which is infringement under the law, you must have an act of direct infringement. So with respect to products, the only direct infringement finding thus far is with Mentalix. That's correct. So no other customer is a Suprema. That's correct, Your Honor. So how could one possibly argue that... So, in other words, are you agreeing then with me that the exclusion order, at most, would be limited to products that are ultimately sold to Mentalix and not to other customers? Because there's been no findings so far. And maybe at the end of the day, there will be direct infringement. Maybe I'll have a good case and bring it in to court. But at least for purposes of the ITC proceeding, it's got to be confined to Mentalix. No, Your Honor. That's not how exclusion orders are drafted. And for good reason. They would be too easy to evade. The way exclusion orders are drafted is based in part on the name of the case. So what the Commission decides as a limited exclusion order is the unlawful importation, sale for importation, and sale after importation from the respondents of certain biometric scanning devices, components thereof, associated software, and products containing the same that infringe, and then they list the claims in the patent. And that's precisely, then, from that stage, that is up to the Customs Department to determine how to actually enforce that order. Well, that's not very reassuring. I mean, there are no patent lawyers in the Customs Office, right? I mean, this seems to be really a legal and a complicated question, right? I mean, you're not willing to leave it to them. I'm not willing to leave it to them. We've got to resolve this issue here, right? Well, I'm not sure I agree with that, Your Honor. That would be a new rule that would be distinct from the way... So you're saying the Customs Officer picks this up and says, well, all of these devices arguably could be covered, so even if the firm intends, you agree there are non-infringing uses to this product? There was no evidence in any... Well, let's assume that, that there are non-infringing uses. And there's clearly only been a finding of direct infringement with respect to this one customer. So the Customs Officer is going to determine whether or not the product, even if they're going to be sold to other companies who have not been found to be direct infringers of the patent. Nobody's done this inquiry. At the end of the day, they may or may not be. The Customs Officer can't figure that one out, can he? I don't believe that that's within the realm of what the Customs Officer can do. But what I do know is when the Customs Officer makes a specific decision to exclude products, Suprema and its lawyers have an opportunity to speak to that Customs Officer and make their case, and we have an opportunity to speak to the Customs Officer and explain why it falls within the scope of the exclusion order. And if there's a dispute about that, then that's an enforcement action in front of the ITC. So there's an entire regime that's addressed to solving this problem. And the type of exclusion order that's listed here, that doesn't list specific products as a type of exclusion order has been issued by the ITC since Section 337 came into existence. It defines the scope of what's excluded by defining what the general category of products are and that they infringe. And that's the way it's been since Section 337 was implemented, Your Honor. And if I sit here today on the fly, I respectfully apologize, but I can't come up on short notice how to redo that statutory scheme. And if it was going to be redone, I would submit that it ought to be redone by the expert agency or possibly at the direction of Congress and not by this Court. This is the ITC's interpretation of how they should interpret the statute that Congress has dedicated to them to enforce. With regards to the question of the willful blindness, I think, again, with caution about the Court's concerns regarding confidentiality, I think if the Court looks at the decision, you'll see that the Court expresses the legal standard from global tech and applies it. I agree that the facts in this case are alarmingly, strikingly close to the facts in global tech. And what the Court will find is that there were significant credibility concerns. And I think what the ITC did by choosing not to find actual knowledge, they probably made the easier factual determination from their perspective. There's no question that if the decision on willful blindness is overturned as a legal matter, although I don't think it is a legal matter, I think it's entitled to substantial evidence and deference for the fact finder, it unquestionably has to be returned because it was substantial, circumstantial evidence of actual knowledge. And, Your Honor, you mentioned that the application, it was only the application and not the patent that was incorporated by reference. That's true, but it was incorporated by reference five times, three separate times in Column 5. And one of those times, what the patent said, examples of the process for print capture and separation are described in U.S. patent application following. There's no way that anyone who had ascertained and read that patent would not be unnoticed that they should have looked at that additional patent application that provides examples of the process of print capture and separation. And if the Court looks at the Commission's ruling, specifically pages A223 and A224, I believe it will find several factual findings by the Commission that Suprema had fully read and understood that 562 patent. Even if those factual findings would normally support this conclusion, and I agree with you that there is some comparison between this and the fact in Global Tech, shouldn't we be concerned that because the intent has a subjective element to it, that because there are no credibility findings and there are no findings on intent by the administrative judge, that the Commission shouldn't have made those findings without first having the administrative judge do its analysis based on the witnesses heard and seen? Respectfully, Your Honor, I believe those findings are implicit in the Commission's findings. So, for example, Suprema's witness testified that they only read the abstract of 562, even though they designed around certain features of the 562 patent, allegedly informing their product. If you read those two pages that I just referred the Court to, you will find that the Commission disregarded that testimony  And that's an express factual finding that's made several times in the Commission's report. Respectfully, in conclusion, I would ask that the Court affirm in all respects the decision as it pertains to the 344 patent and the 993 patent. The extended discussion that we've had regarding the enforceability of the exclusion order and concerns about that are precisely the reason that we would ask the Court to reverse the legal determination on claim construction of that additional imported limitation on the 562 and remand that for evaluation on infringement to the ICC. Can I ask one question before he sits down? I know he's really ready to sit down here. But on that 334, as I understand it, then, you're saying you believe that the word area and the word shape are essentially interchangeable? No, I don't believe that the word area and shape are interchangeable, Your Honor. In fact, if you look at page 23 of our response brief to Suprema's petition, you'll see that the genius of the 344 patent was an understanding that by knowing that you were going to be evaluating the oval shape of the fingerprint, the genius was an understanding, in part, that if you use a combination of shape, meaning height to width ratio, and overall area, you can predict with precision whether the quality of that print is good. So if you look at page 23, you'll see that it's quite possible to have an image that's the right shape but the wrong area, and that doesn't fit, and that would get kicked out as not a good print image. And you can also have one that's the right area but the incorrect shape. And when you combine those two, what it permits is a simplified methodology of trying to evaluate a print image. So the shape is only height and width, and the ovality has nothing to do with it? That's one implementation, Your Honor. But nowhere in the claim or the specification does it talk anything about that you have to measure with precision. All that the respondents are trying to do here, what Suprema's trying to do, is they're trying to import some minimum level of error. At some level, this is for the designers of the system, and if the designer feels that he can capture the shape and area of an oval image accurately using a rectangle, then that's an implementation. That's an implementation. It's certainly covered by the plain meaning of those claims, and those plain languages which obtain their plain meaning are ones that neither side intended needed to be construed until the sense that Prima is purporting to provide a new construction here. That's the way they don't get to do that on the plot. Okay. Thank you. Thank you. Once again, to try to keep things even, we've gone about five or six minutes over on the other side. And you already get three minutes. So, if you want to take up to eight minutes, don't feel that you have to. To even things out, we'll give you that time. I appreciate that, Your Honor. I want to respond first to the claim that our facts here are substantially similar to the Global Tech case. In Global Tech, there was actual copying, an actual infringement by the product that were designed and manufactured by the defendant accused of inducing infringement. That is not the case here. The scanner and the SDK were found not to infringe, and we have not then taken any narrow view of the facts. If you look into the willful blindness standard, it begs the question about high probability of wrongdoing, and it begs the question of willfully blind to what? And the only thing that they were possibly willfully blind to was the existence of the 344 patent. But that is not wrongdoing, especially when the Commission itself found that, as applied to the SDK and scanner products of Socroma, that there was no infringement by those products by themselves. Even in the pleading realm, this Court, as well as the Supreme Court, has said that when you look at facts that could go either way as to innocence or guilt, you have to plead something that shows more than just the things that can go either way in order to state a claim as a matter of law, as a matter of pleading. And certainly here, as a matter of finding willful blindness, which is supposed to be tantamount to actual knowledge, you have to have something more than the set of facts that are assembled by CrossMatch or the Commission, even viewed in the light most favorable. The scanners did not infringe. All the circumstances laid out here do not add up to a high probability of wrongfulness. The 344 patent, even if they had found out about it, even if they had applied it to the products, would have been found not to infringe as the Commission itself found. I also suggest, Your Honor, that I know that there's been a lot of focus on 337, but this Court could avoid the willful blindness, they could avoid the 337 issue if you just found no infringement at all. And going back to the shape detection requirement, the language says on its face detecting a fingerprint shape based on an arrangement of concentrated black pixels in an oval-like shape. And the Commission construed Claim 19 as it did Claim 1 as identifying concentrations of black pixels, which have oval-like shapes, to determine individual fingerprint areas and shapes. And what the Commission did was turn a limiting clause into a descriptive clause where all you had to do was find the concentrations of black pixels and a limitation satisfied because some of them happened to be oval-like. But the point of the patent is to detect the difference between the oval shape and the rectangular shape of other parts of the finger. And you can't do that with a bounding box and you can't do that unless you detect the shape. As to 337, Mr. Grant talked about subsequent sales under 337, but the Touchstone language is still about articles that infringe. So, subsequent sales prohibition only applies still to articles that infringe. So, the articles that are reported do not infringe. They are not subject to 337. And as to Chevron deference, again, I think that this is a matter of statutory construction, a legal question that this Court can certainly address. There's no need to give deference to the administrative agency here. It's not like any of the cases cited by the Commission where there was some deference around what remedies to apply and how to apply the remedies or public policy issues. This is a straight legal question as to how to interpret the statute, certainly something this Court does all the time, and there's no reason to give deference. Unless there are other questions or... Thank you. We thank both parties and appreciate their indulgence. Thank you.